## PHILLIP PAUL WEINER *v.* THE MARYLAND BOARD OF PHARMACY ET AL.

[No. 272, September Term, 1978.]

*Decided December 7, 1978.*

The cause was argued before GILBERT, C. J., and MOORE and LOWE, JJ.

*Glenn E. Bushel,* with whom was *Joseph S. Kaufman* on the brief, for appellant.

*Jack C. Tranter, Assistant Attorney General,* with whom was *Francis Bill Burch, Attorney General,* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

The Legislature, in Laws 1975, ch. 464, now codified as Md. Ann. Code art. 43, § 271A, mandated that the Maryland Board of Pharmacy promulgate a "current prescription price list of the 100 most commonly prescribed drugs, excluding controlled dangerous substances." Section 271A (c). The list

is required to "be displayed prominently in the immediate vicinity of the prescription drug service area . . . [so] as to be easily visible to customers without having to obtain permission or assistance of an employee of the establishment . . . ." Section 271A (d).

Wilful failure to post the list constitutes a violation of the law and "is subject to a fine of not more than $100 for each violation." Section 271A (h).

The appellant, Phillip Paul Weiner, a licensed pharmacist operating Weiner's Pharmacy at 3635 Old Court Road, Baltimore County, Maryland, refused to comply with the posting requirement, and he was charged in the District Court of Maryland for Baltimore County for failing to post the prescription drug price poster. At the hearing before Judge J. William Hinkel, Weiner appeared *pro se* and argued that the act was unconstitutional as it required him to advertise. The matter was taken under advisement by Judge Hinkel who, on June 25, 1976, rendered an oral opinion in which he held Md. Ann. Code art. 43, § 271A to be unconstitutional and "therefore acquitted Phillip Paul Weiner of the . . . charges."

The purpose behind this litigation is to achieve an appellate decision upon the constitutionality *vel non* of Article 43, § 271A. If the act were declared to be constitutional, other pharmacists in situations similar to Mr. Weiner's would be brought into line upon that happening, and further constitutional attacks would be discouraged if not wholly discontinued.

Notwithstanding Judge Hinkel's finding Weiner not guilty, the appellant alleged in his Bill of Complaint for Declaratory Relief and Injunctive Relief, and the appellees admitted, that "the Board of Pharmacy . . . [had] notified . . . Phillip Paul Weiner, and others, that it still . . . [intended] . . . to enforce said law and regulations and . . . [would] prosecute . . . [Weiner] if he . . . [did] not comply with the provisions thereof."

Weiner avers that:

"Desiring to settle the matter, and believing that the statute violated his constitutional rights, but unable

to bear the expense of litigation, ... [Weiner] authorized his attorney to inquire whether the Attorney General's office, Consumer Protection Division, would be willing to finance an adversary proceeding to test the law. The Consumer Protection Division believed that the issue was of sufficient public importance, affected Maryland customers, and agreed to such course of action." [1]

Appellant's counsel then filed a "Bill of Complaint for Declaratory Relief and Injunctive Relief." He prayed that the circuit court "declare Article 43, § 271A (ch. 464 of the Laws of 1975) to be unconstitutional as it violates ... [Weiner's], as well as others', rights secured under the 14th Amendment of the U.S. Constitution." The Bill also asked that the Pharmaceutical Board be enjoined from enforcing the provisions of Md. Ann. Code art. 43, § 271A.

The matter was heard before Judge Walter R. Haile on June 24, 1977. The judge held the case *sub curia* until March 7, 1978, at which time he declared the statute to be constitutional, thereby denying the relief sought by Weiner.

Subsequent to the decree, the Assistant Attorney General, under date of March 27, 1978, called Judge Haile's attention to *Reyes v. Prince George's County,* 281 Md. 279, 380 A. 2d 12 (1977). The Attorney General's letter advised Judge Haile that:

"In the instant case, Joseph S. Kaufman, Esquire, was retained by our office to institute this action on behalf of the Petitioner. Our desire in having the issues raised by this case adjudicated resulted from a criminal action brought against Petitioner in which a Maryland District Court held that the pharmacy

---

1. The Assistant Attorney General's letter to Judge Haile on March 27, 1978, contained in the record before us in this appeal, expresses a somewhat different set of facts. It states that appellant's attorney "was retained by our office to institute this action on behalf of the petitioner" and that "he was chosen and his services paid for by this office."

While the two statements of fact seem at first glance to be in conflict, they are not. In actuality, Weiner's counsel, though initially chosen by Weiner, was also chosen and approved by the Attorney General to represent Weiner at the expense of the State.

price posting law (Article 43, Section 271A) was unconstitutional. Because the State could not appeal that decision and because of the impact of that decision of the Board of Pharmacy's ability to enforce the price posting law, it was necessary that the constitutionality of this statute be determined by a higher court. Hence, Mr. Kaufman was retained to represent the Petitioner in the instant case."

Judge Haile responded on the 30th day of March that he had received the letter and "handed it to the clerk to file in the Court file." The appeal was noted to this Court the very next day, March 31, 1978.

Although the case *sub judice* presents interesting questions of the constitutional rights of the individual *vis-à-vis* the rights of society generally, we do not believe we are at liberty to decide them because of *Reyes.*

The Court of Appeals, speaking through Judge Digges in *Reyes,* said: "[W]ith this case [we] establish new procedures under which actions of a narrowly defined class may be adjudicated despite their collusive characteristics. . . ." 281 Md. at 287, 380 A. 2d at 16. The Court delineated "precise rubrics" governing those situations when it is advisable to entertain declaratory actions notwithstanding the fact that one party is paying the fees and expenses of both sides of the controversy, saying:

"A declaratory judgment suit having as a proper party a governmental body, or an agency or official thereof, and otherwise cognizable under sections 3-401 to -415 of the Courts Article, which action involves the validity of a statute or governmental regulation having the force of statute, or an urgently needed determination affecting future governmental conduct, and in which the public's concern is both imperative and manifest, need not hereafter necessarily be dismissed as collusive by a court of this State *if there is strict adherence to the following procedures:* (1) that the court is informed by the party actually initiating, promoting or

financing the litigation, at the time of the filing of that party's initial pleading, that the opposing party, though having standing to maintain the suit, nonetheless appears in a manner which may render the action collusive; (2) that the party actually desiring the requested adjudication bind itself, in such manner as may be prescribed by the court, to pay at the court's direction such fees and other expenses of counsel appointed in the manner provided next below; and (3) that the court name counsel, without recommendation or suggestion by any party to the action, to present in the same manner and to the same extent as though representing a truly adverse party, a position in opposition to that taken by the party who initiated and for whose benefit the action was instituted . . . ." (Footnote omitted.) (Emphasis supplied.) 281 Md. at 299-300, 380 A. 2d at 24.

Appellant asserts that *Reyes* does not apply to him because it has no retroactive or retrospective qualities. We believe *Reyes* does apply because it was decided on October 31, 1977, a period of four (4) months and one (1) week before Judge Haile handed down his decree on March 7, 1978. In the *Reyes* opinion, it is stated that the criteria are applicable to "the adjudication of collusive suits arising hereafter . . . . Obviously, however, . . . [the appellee in *Reyes*] could not have complied with . . . [the new] procedures. . . . Nonetheless, no effort was made to affirmatively conceal the true facts, and the safeguards against insufficient adverseness we have just enunciated for future cases have in this case been effectuated through this Court's own actions. . . ." 281 Md. at 301, 380 A. 2d at 24.

We interpret *Reyes* as applying to all similar cases that had not reached the judgment stage. Unlike the facts in *Reyes* where the parties could take no action to comply with the *Reyes* criteria because they had not even been announced, the litigants in the case *sub judice* were afforded ample time (four

months and one week) from the date of the *Reyes* decision until the decree of March 7, 1978, to meet its requirements.[2]

The parties hereto did file, in this Court, a "Disclosure of Fee Arrangement Under Reyes v. Prince George's County" which they suggest complied with the *Reyes* holding. We, however, have a different view. We believe the Court of Appeals meant that the trial court was to be notified of the true nature and purpose of the suit. If that is done, the appellate court, by virtue of the record, will gain that knowledge should the matter be appealed. We think the Court did not intend to allow litigants to avoid *Reyes* compliance at the trial level and then satisfy it at the appellate stage. That type of procedure might well lead to a pattern of disclosure at the appellate level only, or for that matter, only at the highest level of our appellate structure.

We have no doubt that the presentation made by Weiner's attorney is as vigorous as anyone could expect from the strongest of adversaries. Nevertheless, the method employed by the State in bringing this litigation gives rise to the appearance of impropriety in the form of collusion. As *Reyes* points out, "selection of counsel and payment of his fees by an opposing party is always equivalent to dominating the conduct of the litigation." 281 Md. at 285, 380 A. 2d at 16. While counsel for Weiner was chosen by Weiner, and counsel in turn approached the State which agreed to pay that attorney, the distinction does not cure the appearance of collusion. The *Reyes* prerequisites were carefully and thoughtfully designed to avoid that very appearance of impropriety. That is one of the reasons counsel should be selected by the court.

As interesting as the merits of Weiner's case may be, we believe we are precluded by *Reyes* from reaching them, and we so hold.

Because we hold *Reyes* to be applicable to the matter

---

2. We attach no blame to Mr. Kaufman for the failure to notify Judge Haile. It is clear from *Reyes* that the "party . . . promoting or financing the litigation" should be the one to apprise the judge of the true nature of the case. In the matter *sub judice* that onus fell on the Attorney General's office.

before us and because it was viable at the time the judge handed down his decree, it was binding upon him.

We shall, therefore, invoke our power under Md. Rule 1071 and remand the matter without affirmance or reversal for reconsideration by the trial judge in the light of *Reyes*.

> *Case remanded without affirmance*
> *or reversal for reconsideration in*
> *accordance with this opinion.*
> *Costs to be paid by appellees.*